[Cite as *State v. Hamilton*, 2017-Ohio-230.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

LARRY E. HAMILTON

    Appellant

C.A. No.    15CA010830

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    14CR090425

DECISION AND JOURNAL ENTRY

Dated: January 23, 2017

CARR, Presiding Judge.

{¶1} Appellant Larry Hamilton appeals his conviction in the Lorain County Court of Common Pleas. This Court affirms in part, reverses in part, and remands.

I.

{¶2} Hamilton was indicted on two counts of trafficking in drugs (cocaine), both of which included major drug offender and forfeiture specifications; one felony count of possession of drugs (cocaine), which included a major drug offender specification; one count of possessing criminal tools; one count of drug paraphernalia offenses; and one minor misdemeanor count of possession of drugs (marijuana). He filed a motion to suppress all evidence seized from his residence and as a result of trash pulls. After a hearing on the motion, the trial court denied the motion. The court reasoned, first, that Fourth Amendment protections do not extend to trash voluntarily left beyond the curtilage of a home. Hamilton conceded as much in his motion to suppress. Second, the trial court found that, even were it to strike all averments in the affidavit

that Hamilton alleged were false, there was still probable cause to search Hamilton's home under the totality of the circumstances. Finally, the trial court noted that there was no requirement that the detective-affiant indicate that the confidential informant on whom the detective relied was reliable, given the existence of corroborating information.

{¶3} The matter proceeded to trial. The State dismissed one count of trafficking in cocaine. At the conclusion of trial, the jury found Hamilton guilty of the remaining five counts, additionally finding that the amount of cocaine relative to the trafficking and possession counts was equal to or exceeded 100 grams. Hamilton waived his right to a jury determination regarding the forfeiture specification appended to the trafficking charge and instead stipulated to forfeiture of $19,135.00 in U.S. currency. At sentencing, the trial court found Hamilton to be a major drug offender. It further merged the possession of cocaine charge into the trafficking charge and sentenced Hamilton to 11 years in prison and ordered him to pay a fine of $10,000 for trafficking. After imposing periods of incarceration on the remaining three counts, ranging from "no time" to 11 months, the court ordered that all sentences would run concurrently. The trial court further suspended Hamilton's payment of the mandatory fine due to his indigency. Hamilton timely appealed and raises four assignments of error for review. This Court rearranges some assignments of error and consolidates others to facilitate review.

II.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE WHEN IT WAS CLEARLY DEMONSTRATED THAT THE LORAIN POLICE DEPARTMENT RELIED ON FALSE AND UNRELIABLE INFORMATION TO SECURE A SEARCH WARRANT OF 1485 F STREET, LORAIN, OHIO.

{¶4} In his fourth assignment of error, Hamilton argues that the trial court erred by denying his motion to suppress because the police department relied on false and unreliable information when seeking a search warrant of Hamilton's residence. This Court disagrees.

{¶5} Hamilton does not argue that the affidavit underlying the search warrant was deficient on its face. Instead, he argues from two perspectives that the detective-affiant made false statements to support a finding of probable cause to issue the search warrant. First, he argues that the detective-affiant must have relied on information provided by an unreliable confidential informant because he did not aver as to the informant's reliability. This Court has held, however, that "'[t]here is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information.'" *State v. Norris*, 9th Dist. Wayne No. 05CA0081, 2006-Ohio-4022, ¶ 10, quoting *State v. Fisher*, 9th Dist. Summit No. 22481, 2005-Ohio-5104, ¶ 7. Accordingly, "where an affidavit sufficiently details some of the underlying circumstances, where the reason for crediting the informant is given, and where probable cause is or has been found, this Court should not rely on a hyper-technicality to invalidate a warrant. Instead, the affidavit should be interpreted in a common sense manner." (Internal citations omitted.) *Norris* at ¶ 10. Probable cause exists when the totality of the circumstances indicates a mere probability of criminal activity. *Id.* at ¶ 11.

{¶6} In this case, Detective Howard Heathcoat of the Lorain Police Department averred that an unnamed confidential informant reported that Hamilton was engaged in drug trafficking activities involving cocaine at the residence he shared with his live-in girlfriend. The confidential informant provided information regarding Hamilton's manner of transporting the cocaine, how frequently he obtained the drug, and that he brought it into the residence. The detective further averred that he was aware of Hamilton's significant drug trafficking history in

both the City of Lorain and Lorain County. Surveillance on the residence indicated the comings and goings of several known drug dealers. A series of ten trash pulls over a six-and-a-half month period from garbage discarded from the residence produced evidence of (1) Hamilton's use of the address as his residence (mail addressed to him), (2) cocaine residue on various items at various times, and (3) multiple empty bottles of a non-controlled substance known to be used as a cutting agent for illegal drugs.

{¶7} Given the affidavit's sufficient detail as to the underlying circumstances; the confidential informant's report that corresponded with Hamilton's known history; and evidence demonstrating the probability of criminal activity, coupled with our precedent eschewing a requirement that the affiant aver that a confidential informant is reliable, this Court concludes that the trial court did not err by refusing to find that the detective-affiant relied on unreliable information in his affidavit in support of the search warrant.

{¶8} Second, Hamilton argues that Detective Heathcoat included false or misleading information in his affidavit to secure a search warrant. Hamilton does not argue that any specific information in the affidavit is false; rather, he argues that some of the information is misleading because the detective omitted certain information. Specifically, Hamilton argues that, although field tests on some substances found during the ten trash pulls produced positive results for cocaine, some of the subsequent lab results did not validate the field tests. The reasonable inference we glean from Hamilton's argument, therefore, is that some information regarding the presence of cocaine in the trash obtained from Hamilton's residence was false. Although Hamilton did not expressly request that the trial court strike any reference in the affidavit to field tests that were not ultimately corroborated by lab test results, the appropriate remedy would be to

strike the false or misleading information. *See State v. Dibble*, 133 Ohio St.3d 451, 2012-Ohio-4630, ¶ 17, quoting *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978).

{¶9} As this Court has written:

To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either intentionally, or with reckless disregard for the truth. *State v. Waddy*, 63 Ohio St.3d 424, 441 (1992), quoting *Franks*, 438 U.S. at 155-156. Reckless disregard means that the affiant had serious doubts about the truth of an allegation. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 31, quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984). Omissions count as a false statement if designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate. *McKnight* at ¶ 31, quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir.1990).

(Internal quotations omitted.) *State v. Jackson*, 9th Dist. Lorain No. 14CA010593, 2015-Ohio-3520, ¶ 22.

{¶10} Hamilton argues that the trial court erred by denying his motion to suppress based on an application of the test enunciated in *Franks*, *supra*, and summarized as follows:

[A] court considering whether to suppress evidence based on an allegation that the underlying affidavit contained false statements must apply a two-part test: (1) whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant.

*United States v. Charles*, 138 F.3d 257, 263 (6th Cir.1998).

{¶11} At the suppression hearing, Detective Heathcoat admitted that he had some lab results from the many pieces of trash collected and suspected to contain controlled substances. He admitted that he did not include any lab results in his affidavit and, moreover, that many of the samples which tested presumptively positive for cocaine during field tests ultimately tested negative in the lab. The detective testified that he was not surprised that lab results contradicted some field test results because the field tests are not always accurate.

{¶12}  The trial court emphasized that it did not find that Hamilton had met his burden of proving by a preponderance of the evidence that Detective Heathcoat provided false information or that he was reckless or deliberate in that regard.  However, the trial court assumed for the sake of argument that Hamilton met the first prong of the *Franks* test and went on to consider whether the affidavit provided the requisite probable cause in support of the warrant even after the redaction of the detective's statements regarding positive field tests that later proved to be negative for controlled substances.  This Court, too, assumes without deciding that Hamilton met his burden of proof to show that the affidavit contained deliberately or recklessly false statements.

{¶13}  Hamilton, however, makes no argument on appeal regarding the information which he believes must be stricken from the affidavit or how such a redacted affidavit fails to demonstrate probable cause to support the issuance of the search warrant.  Although Hamilton cites law for the proposition that a search warrant must be voided and the fruits of the search excluded if the affidavit's remaining content after the false or misleading portions have been stricken does not support probable cause, he makes no argument as to why the remaining content does not support probable cause.  This Court has frequently written that we will not create an argument for an appellant who is responsible for providing a roadmap to guide our review.  *Princess Kim, L.L.C. v. U.S. Bank, N.A.*, 9th Dist. Summit No. 27401, 2015-Ohio-4472, ¶ 12.  Nevertheless, even disregarding all references in the affidavit to positive field tests which ultimately were not verified by laboratory results, the remaining averments supported a finding of probable cause to sustain the search warrant.  The first, fifth, eighth, ninth, and tenth trash pulls yielded numerous pieces of evidence that tested both presumptively positive after a field

test and definitively positive after laboratory testing. Accordingly, the trial court did not err by denying Hamilton's motion to suppress. The fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN LETTING THIS CASE GO TO THE JURY WHEN THERE WAS NOT SUFFICIENT, COMPETENT EVIDENCE IDENTIFYING THE DISPUTED SUBSTANCE AS "COCAINE" AS DEFINED BY R.C. 2925.01(X).

{¶14} Hamilton's assertion that there was insufficient evidence to identify the alleged controlled substance as "cocaine" to support his convictions for trafficking and possession is premised on the argument that only the weight of the pure cocaine, and not the additional weight of any cutting or diluting agents, may be considered for purposes of determining the penalty level of the offenses of trafficking and possession of cocaine. Although Hamilton frames his argument in terms of sufficiency, we recognize that the substance of his argument is that the State failed to present evidence to support an enhanced penalty for possession and trafficking in cocaine because it must have presented evidence of the actual weight of the cocaine exclusive of any filler materials or cutting agents. As the Supreme Court of Ohio has recently determined this issue, we find Hamilton's arguments well taken.

{¶15} Hamilton was convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(2), and possession of cocaine in violation of R.C. 2925.11(A). The penalties for both offenses increase as the weight of the cocaine increases. R.C. 2925.03(C)(4); R.C. 2925.11(C)(4). The relevant penalty sections contained in R.C. 2925.03(C)(4)(g) and R.C. 2925.11(C)(4)(f) are identical in relevant part as it relates to this discussion. Both provisions provide: "If the amount of the drug involved equals or exceeds one hundred grams of cocaine, [possession of and trafficking in] cocaine [are] felon[ies] of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison

term prescribed for a felony of the first degree." R.C. 2925.03(C)(4)(g) and R.C. 2925.11(C)(4)(f). Where the amount of cocaine does not meet certain threshold amounts, however, possession of cocaine and trafficking in cocaine constitute felonies of the fifth degree. R.C. 2925.11(C)(4)(a); R.C. 2925.03(C)(4)(a). In other words, where cocaine is involved in the commission of these offenses, yet the State fails to prove that the amount was equal to or exceeded five grams, the offenses constitute felonies of the fifth degree.

{¶16} In *State v. Gonzales*, Slip Opinion No. 2016-Ohio-8319, the Supreme Court of Ohio certified a conflict question regarding whether the State, "in prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)[(b)] through (f), [must] prove that the weight of the cocaine meets the statutory threshold, *excluding* the weight of any filler materials used in the mixture?" (Emphasis added.) *Gonzales* at ¶ 1. In a split decision, the high court concluded that the provisions of the possession statute addressing the penalty hierarchy based on the amount of cocaine involved were not ambiguous. *Id*. at ¶ 20. Moreover, based on what it concluded to be the plain language of those provisions, the *Gonzales* court held that the State must prove the weight of the "actual cocaine" involved in cocaine possession offenses, exclusive of the weight of any filler material or cutting agents. *Id.* at ¶ 22. Immediately thereafter, the Supreme Court of Ohio expanded its holding in *Gonzales* regarding the possession of cocaine to the offense of trafficking in cocaine. *State v. Sanchez*, Slip Opinion No. 2016-Ohio-8470. Accordingly, to substantiate an enhanced penalty for convictions for possession and trafficking in cocaine pursuant to R.C. 2925.11(C)(4) and R.C. 2925.03(C)(4), the State must prove the weight of the actual cocaine, excluding any filler or cutting agents, involved in the offenses.

{¶17} In *State v. Jackson*, 9th Dist. Lorain No. 15CA010828, 2016-Ohio-7637, this Court came to the opposite conclusion. The defendant there argued that his trafficking and

possession of cocaine convictions were based on insufficient evidence and were against the manifest weight of the evidence because the State failed to present evidence of the amount of "pure cocaine" involved in the offenses. *Jackson* at ¶ 6. This Court considered the language of R.C. 2925.03(C)(4) and R.C. 2925.11(C)(4) regarding "the amount of the drug involved" for penalty purposes, found it to be ambiguous, applied the relevant canons of construction, and concluded that "it is the total aggregate weight of the drug involved which is determinative. Whether the substance is pure cocaine or diluted is inconsequential." *Id*. at ¶ 7-15. In addition, we concluded that our interpretation of the penalty provisions was supported by both the legislative history and historical treatment of the statutes. *Id.* at ¶ 16. As a result, this Court held that "the proper standard for determining the weight of the drug involved in a trafficking or possession of cocaine offense is the total weight of the drug involved, including the pure cocaine and any cutting agents * * *." *Id.* at ¶ 19. As we are constrained by the binding authority of the Supreme Court's holdings in *Gonzales* and *Sanchez*, however, this Court overrules our precedent in *Jackson*. We accordingly hold that the State must prove the weight of the actual cocaine involved in the crimes of possession of cocaine and trafficking in cocaine, excluding any cutting agents or filler materials to support an enhanced penalty. Hamilton's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY THAT THE AMOUNT OF CONTROLLED SUBSTANCE INCLUDES THE WEIGHT OF ANY MIXTURE THAT INCLUDES SOME DETECTIBLE AMOUNT OF A CONTROLLED SUBSTANCE.

{¶18} Hamilton argues that the trial court erred by failing to instruct the jury that the amount of cocaine involved with respect to the possession and trafficking offenses must be determined by the weight of the actual cocaine exclusive of any filler or cutting agents. Based

on our resolution of the first assignment of error, this Court declines to address the second assignment of error as it has been rendered moot. *See* App.R. 12(A)(1)(c).

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BECAUSE THE GUILTY VERDICTS IN THIS CASE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE THE[Y] VIOLATE THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶19} Hamilton argues that his convictions are against the manifest weight of the evidence. Specifically, Hamilton argues that the jury's finding that he possessed any of the contraband underlying the offenses was against the manifest weight of the evidence. This Court disagrees.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

{¶20} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

**{¶21}** As Hamilton limits his argument to the issue of possession, i.e., whether he had control over the drugs, criminal tools, or paraphernalia found at 1485 F Street, Lorain, Ohio, so do we. Moreover, we further limit our discussion to the issue of whether Hamilton's convictions as to the underlying offenses, exclusive of the issue of any penalty enhancements, were against the manifest weight of the evidence.

**{¶22}** Hamilton was convicted of possession of drugs (cocaine and marijuana), possession of criminal tools, and possession of drug paraphernalia. "No person shall knowingly * * * possess * * * a controlled substance * * *." R.C. 2925.11(A). "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A). "[N]o person shall knowingly use, or possess with purpose to use, drug paraphernalia." R.C. 2925.14(C)(1). R.C. 2901.22(B) states that "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

**{¶23}** "Possess" or "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). R.C. 2901.21(D)(1) states that "[p]ossession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." It is well settled that "a person may knowingly possess a substance or object through either actual or constructive possession." *State v. See*, 9th Dist. Lorain No. 08CA009511, 2009-Ohio-2787, ¶ 10, quoting *State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16. "'Constructive possession exists when an individual

knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Reis*, 9th Dist. Summit No. 26237, 2012-Ohio-2482, ¶ 7, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. As this Court recognizes, "[t]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control over it." (Internal quotations omitted.) *Reis* at ¶ 7, quoting *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2011-Ohio-5997, ¶ 15, quoting *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, ¶ 30 (2d Dist.). Inherent in the notions of dominion and control is some authority over the object, not merely the ability to have access to it. *See* R.C. 2925.01(K). Nevertheless, "constructive possession may be inferred from the drugs' presence in a usable form and in close proximity to the defendant." *State v. Figueroa*, 9th Dist. Summit No. 22208, 2005-Ohio-1132, ¶ 8, citing *State v. Thomas*, 9th Dist. Summit No. 21251, 2003-Ohio-1479, ¶ 11. In addition, "[c]ircumstantial evidence is itself sufficient to establish dominion and control over the controlled substance." *Hilton*, 2004-Ohio-1418, at ¶ 16. Moreover, "[p]ossession of a drug includes possessing individually, or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." *Figueroa* at ¶ 8, quoting *State v. Alicea*, 8th Dist. Cuyahoga No. 78940, 2001 WL 1243944, *6 (Oct. 18, 2001).

{¶24} The Lorain Police Department initiated an investigation relating to 1485 F Street, in Lorain, after receiving complaints that Hamilton was selling drugs out of that residence. Various police detectives conducted surveillance and saw Hamilton come and go from the residence. The police conducted ten trash pulls from garbage discarded at the residence and found various pieces of mail addressed to Hamilton. After obtaining a search warrant for the

residence based in part on evidence of cocaine and marijuana residue on certain items discarded in the trash, the police searched the home. They first conducted surveillance for over an hour at the residence and saw three cars arrive and leave in quick succession, a common occurrence at drug houses. Hamilton did not arrive or depart in those vehicles. Upon executing a knock, announce, and enter protocol, the police found a naked Hamilton in the upstairs master bedroom with his girlfriend. More mail and documents belonging to Hamilton were found in the home. The police found both Hamilton's and his girlfriend's state identification cards in a dresser drawer, along with a large sum of cash. In addition, men's hats and clothing and men's cologne were found in the master bedroom, along with some amount of powder cocaine and crack cocaine. Chemical testing verified these substances as cocaine. Baggies, a scale, hammer, strainer, and a known drug cutting agent, along with small pieces of cocaine which speckled the kitchen counter, and over $19,000.00 in various places throughout the house, indicated that the residence was "being run" as a drug house. Based on their experience, the police detectives involved in this case testified that anyone inside such a house is trafficking in drugs and turning a large profit, rather than merely making personal, recreational use of drugs.

{¶25} The police admitted that they did not attempt to determine whose name was on the lease to the residence, who paid the utilities in the home, or to whom a vehicle parked in the driveway was registered. Although some mail addressed to Hamilton, as well as his state identification card (which had expired two years earlier), noted addresses other than the F Street address, the police detectives testified that people engaged in illegal activities like drug trafficking tend not to update their addresses or maintain current forms of identification, register vehicles, or execute leases, so as to "fly under the radar" and avoid tracking by police. Based on

the collective experience of the police detectives, moreover, it is common that male drug traffickers engage in those activities in their girlfriends' homes.

{¶26} A thorough review of the record indicates that this is not the exceptional case where the evidence weighs heavily in favor of Hamilton. The weight of the evidence supports the conclusion that Hamilton possessed the drugs and other contraband found during the search of 1485 F Street, in Lorain. There was indicia of his residence in the home, including mail, personal belongings, an identification card, and his repeated presence. The evidence indicated that he lived there with his girlfriend. Given his proximity to the drugs and other contraband, there was a reasonable inference that Hamilton constructively possessed those items. The large sums of money found throughout the residence, along with the locations and prevalence of drug-related and trafficking-related items throughout the residence indicated that Hamilton had the ability to exercise dominion and control over those items. Accordingly, Hamilton's convictions for possession of cocaine, possession of marijuana, possession of criminal tools, and possession of drug paraphernalia are not against the manifest weight of the evidence. The third assignment of error is overruled.

### III.

{¶27} Hamilton's first assignment of error is sustained. We decline to address the second assignment of error. The third and fourth assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

DONNA J. CARR
FOR THE COURT


WHITMORE, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

JACK W. BRADLEY, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and ELIZABETH LINDBERG, Assistant Prosecuting Attorney, for Appellee.