[Cite as *State v. Zuravel*, 2017-Ohio-1540.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO

    Appellee

v.

PAUL A. ZURAVEL

    Appellant

C.A. No.    28217

APPEAL FROM JUDGMENT
ENTERED IN THE
STOW MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    2015CRB02092

DECISION AND JOURNAL ENTRY

Dated: April 26, 2017

---

TEODOSIO, Judge.

{¶1} Appellant, Paul A. Zuravel, appeals from his conviction for criminal trespass in Stow Municipal Court. This Court affirms.

I.

{¶2} On April 30, 2015, Mr. Zuravel was involved in a series of incidents throughout the day at Stow City Hall while attempting to get a 2013 plat signed. He went to city hall on two separate occasions and engaged in a series of loud and heated arguments with various members of staff. At one point, he was overheard by city employees making a comment in reference to needing a "CCW." The police were called and a criminal report for menacing was filed, but no criminal charges were filed against him.

{¶3} Afterwards, based on Mr. Zuravel's history of similar incidents at city hall and the intensified nature of the events of April 30th, the mayor wrote a letter to Mr. Zuravel and set some parameters for the time, place, and manner in which he could interact with city personnel

and conduct business at city hall. The letter advised him that he could be charged with criminal trespass if he did not follow its terms and conditions. The letter was delivered to Mr. Zuravel at his home and read aloud to him.

{¶4} On July 2, 2015, Stow's director of planning and development emailed Mr. Zuravel with the statement, "You can have the drawings you submitted. We'll put them in the mail if you like." The director soon left city hall on business, but Mr. Zuravel later responded with an email asking to have the drawings placed at a secretary's desk. After receiving no reply back, Mr. Zuravel decided to go to city hall to pick up his items. When he arrived at city hall, the police were called and Mr. Zuravel was arrested for criminal trespass.

{¶5} Mr. Zuravel filed a motion to dismiss. The State responded in opposition and a hearing was held. The trial court denied the motion and the case proceeded to a jury trial. After the State presented its case-in-chief, Mr. Zuravel made a Crim.R. 29 motion for judgment of acquittal and renewed his motion to dismiss. The trial court denied the motions and Mr. Zuravel was subsequently convicted of criminal trespass.

{¶6} Mr. Zuravel now appeals from his conviction and raises four assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT MR. ZURAVEL'S MOTION TO DISMISS.

{¶7} In his first assignment of error, Mr. Zuravel argues that the trial court erred when it failed to grant his motion to dismiss. We disagree.

{¶8} This Court has stated that:

> A motion to dismiss tests the sufficiency of the [complaint], without regard to the quantity or quality of evidence that may be produced at trial. A pretrial motion must not involve a determination of the sufficiency of the evidence to support the [complaint]. If the [complaint] is valid on its face, a motion to dismiss should not be granted.

*State v. Morrison*, 9th Dist. Summit No. 24965, 2010-Ohio-6309, ¶ 17. A criminal defendant's pretrial motion to dismiss that goes beyond the face of the complaint is essentially a motion for summary judgment on the complaint prior to trial, which is not permitted under the Ohio Rules of Criminal Procedure. *State v. Noble*, 9th Dist. Lorain No. 04CA008495, 2005-Ohio-600, ¶ 7. Claims that go beyond the face of the complaint may only be presented as a motion for acquittal at the close of the state's case. *See State v. Tipton*, 135 Ohio App.3d 227, 229 (9th Dist.1999), citing Crim.R. 29(A).

{¶9} Mr. Zuravel argues that the trial court should have granted his motion to dismiss because (1) the mayor's letter is void as an abuse of executive power beyond the scope of her official capacity and violates his due process rights under the Fourteenth Amendment, (2) the mayor's letter violates his right to freedom of speech and right to peaceably assemble under the First Amendment, and (3) Mr. Zuravel acted within his requisite privilege and authority to visit city hall.

{¶10} However, Mr. Zuravel raised these issues prematurely in his pretrial motion to dismiss. All of Mr. Zuravel's arguments would require the court to determine the sufficiency of the evidence supporting the complaint instead of the sufficiency of the complaint itself. Mr. Zuravel did not assert, nor did the trial court find that the complaint was invalid on its face. *See State v. Johnson*, 9th Dist. Summit No. 27558, 2015-Ohio-3449, ¶ 14. We conclude that the trial court did not err when it denied Mr. Zuravel's motion to dismiss.

{¶11} Mr. Zuravel's first assignment of error is overruled.

{¶12} For ease of analysis, we consolidate Mr. Zuravel's second and third assignments of error.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN ENTERING JUDGMENT ON THE VERDICT BECAUSE IT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶13} In his second and third assignments of error, Mr. Zuravel argues that the trial court erred in denying his Crim.R. 29 motion and erred in entering judgment on the verdict because it was not supported by sufficient evidence. We disagree with both propositions.

{¶14} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *Thompkins* at 386. But, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶15} Here, Mr. Zuravel was convicted of criminal trespass under R.C. 2911.21(A)(3), which states, in part, that "[n]o person, without privilege to do so, shall * * * [r]ecklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender * * *."  R.C. 2901.01(A)(12) defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." Members of the public generally have the right to enter and remain on public areas of public property and a county official may not revoke such a privilege if the person is merely being a nuisance. *State v. Shelton*, 63 Ohio App.3d 137, 139-140 (4th Dist.1989).  Nonetheless, criminal trespass can occur on public property. *Id.* at 139, citing *Adderley v. Florida*, 385 U.S. 39 (1966); *see also* R.C. 2911.21(B).  Additionally, R.C. 2901.22(C) provides:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶16} Mr. Zuravel argues that the State did not offer sufficient evidence to prove every element of the offense of criminal trespass beyond a reasonable doubt because (1) the mayor's letter did not establish valid or adequate notice against unauthorized access to city hall, (2) he did not recklessly enter or remain at city hall after receiving an email that he perceived as an invitation to pick up his drawings, and (3) he did not lack privilege because his behavior did not rise above the level of being a nuisance.

{¶17} The State presented testimony at trial from ten witnesses.  The assistant city engineer testified that, on the morning of April 30, 2015, Mr. Zuravel emailed her regarding a water line extension for three of his residential lots that he wanted to split into four lots.  Mr.

Zuravel also called her two hours later regarding the plat for his property that he had submitted back in 2013. The plat was somehow unsigned and had never been recorded. Mr. Zuravel wanted the plat signed immediately, but the assistant informed him that she was unauthorized to sign it because she was not the person who originally reviewed it. She explained that he would need to speak to the city engineer or the consultant city engineer surveyor who reviewed the plat back in 2013. Moreover, additional information such as a legal description from a surveyor and a deed of transfer were also required before the plat could be signed. Mr. Zuravel continued to argue with her and refused to accept any of her answers or explanations.

{¶18} Mr. Zuravel showed up at city hall about an hour later and again demanded that the assistant sign the plat. She refused Mr. Zuravel's demands again, but called the city engineer for guidance on how to handle the matter. The city engineer wanted Mr. Zuravel to leave the plat at city hall for review. The assistant testified that she knew from her prior dealings with Mr. Zuravel that he could get out of hand verbally, so she texted the service director to come by and help her handle the situation. The assistant told Mr. Zuravel that he would have to come back and he became very angry. When she also mentioned that Mr. Zuravel did not have the deeds that he needed to have with him, his face became red, he was worked up and quickly looking around, and he began repeating things over and over again. He was very defensive and spoke in a loud, deep, bellowing voice that could be heard at the other end of the office. The service director arrived and Mr. Zuravel eventually calmed down. They all agreed for him to return the next morning and Mr. Zuravel soon left the building without his plat.

{¶19} At approximately 3:00 P.M., Mr. Zuravel emailed the assistant again and stated, "I want it now. Can we have it now?" She replied that it could not be done right now and that additional information was still needed. About an hour later, Mr. Zuravel called the Building

and Engineering Department clerk and asked for someone named Amber. The clerk testified that while she was attempting to locate Amber, Mr. Zuravel hung up the phone. Less than two minutes later, he walked into city hall again.

{¶20} The Parks and Recreation Department secretary testified that Mr. Zuravel went to the restroom and she overheard him say the words "need a CCW." She conferred with the Building and Engineering Department clerk, who also testified that she overheard Mr. Zuravel say the words "I need" along with something else she could not make out. When the clerk realized that a CCW referred to a gun, she became frightened and called the police. She was still on the line with police when Mr. Zuravel emerged from the restroom. He seemed calm, so the clerk told the police to disregard because everything was under control and everyone was okay.

{¶21} Mr. Zuravel spoke with the assistant city engineer again and handed her some deeds that he had printed off of the internet. When she told him the deeds were incomplete, Mr. Zuravel became angry again and began arguing with her, claiming that he did not need the deeds and also asking to see the codified ordinance on the matter. His raised his voice and spoke in a condescending manner to her.

{¶22} The city engineer testified that when he arrived at city hall, Mr. Zuravel yelled down the hall at him. Mr. Zuravel seemed agitated as he forcefully placed a quitclaim deed down on the counter and said he did not know how to fill it out. Mr. Zuravel resumed arguing with both the assistant and the engineer for approximately ten to fifteen minutes while in the vicinity of all the other secretaries and clerks. The assistant testified that her entire day was devoted to dealing with Mr. Zuravel.

{¶23} The engineer testified that Mr. Zuravel said to him, "You look at me when you talk." The engineer said, "Paul, you're harassing us. You're bullying us." Mr. Zuravel, who is

taller than the engineer, replied, "I'm bullying you?" He then glared and grimaced at the engineer while looking down at him and the room went silent. The engineer was frightened and felt physically threatened. He did not know if Mr. Zuravel was going to attack him or do something else, so he asked if Mr. Zuravel wanted to see the plat, as a way of breaking the silence.

{¶24} The engineer began walking really fast, ten to fifteen feet ahead of Mr. Zuravel, and led him upstairs toward the engineer's office. As the engineer passed another secretary, he told her to call the police. Mr. Zuravel became very agitated and mad once the police were called. His face was red, he appeared anxious, and he had veins bulging on his neck. On their way upstairs, Mr. Zuravel began arguing with yet another city employee. The Building and Engineering Department clerk testified that she called the police again and also called the mayor's secretary to warn her that the men were coming her way. The clerk was worried that someone could get shot by Mr. Zuravel.

{¶25} The engineer testified that he was not comfortable with Mr. Zuravel following him into his office and he feared being trapped. He had previously felt cornered by Mr. Zuravel after a city council meeting on a different day. Mr. Zuravel had wanted to get his point across to the engineer and when the engineer tried to leave, Mr. Zuravel reached out, but did not actually touch him. The engineer said, "I got to go to the restroom," and then Mr. Zuravel let him go.

{¶26} Due to the engineer's fear of being trapped, he offered to bring the plat to a table outside of his office where they could both review it. He was worried about Mr. Zuravel's threatening look and very worried about the possibility of the situation becoming physical. The service director soon appeared and told Mr. Zuravel it was time to go. Mr. Zuravel left the building without further incident.

**{¶27}** Officers arrived at the scene and observed Mr. Zuravel and the service director talking to each other in front of city hall. One of the officers testified that Mr. Zuravel asked what was going on and smirked at him. They patted Mr. Zuravel down, handcuffed him, and placed him in the back of a police cruiser for safety purposes. An officer read Mr. Zuravel his *Miranda* rights. Mr. Zuravel admitted that he had been in a heated argument with city hall employees and that he had said something to an employee about a CCW permit. He agreed with the officer that it was not smart for him to bring up a CCW or a gun. The officer completed a criminal report for menacing, but Mr. Zuravel was not charged with any crimes.

**{¶28}** The mayor of Stow testified that she serves as the chief conservator of peace within the municipality. *See* Article III, Section 3.04, of the Stow Charter. She also functions as the safety director and is ultimately responsible for ensuring that citizens have an expectation of safety and that the city has a peaceful, law-abiding community. *See* Article VIII, Section 8.01, of the Stow Charter. After the April 30th incident, the mayor became concerned for the welfare of city employees due to Mr. Zuravel's overall pattern of behavior and his history of intense and angry interactions with city personnel. There was also a heightened sense of concern being reported by employees after the April 30th incident due to the CCW reference and the very intense and unusually high level of anger Mr. Zuravel exhibited toward employees that day.

**{¶29}** The mayor testified that she consulted with the city law director and drafted a letter that set parameters for how and when Mr. Zuravel could interact with city employees and conduct his business with the city. The letter details how Mr. Zuravel now needs to give reasonable notice and make an appointment to conduct his business with employees at city hall. He may still make public records requests, contact elected officials via phone, email, or appointment, and attend public meetings provided he remains in the immediate vicinity of the

meeting room. The letter states that "failure to abide by the terms herein may result in being escorted out of City Hall and/or prosecuted for criminal trespass." It further states that it "should be construed as parameters of how and when we will be able to best serve you, not a denial of service." The parameters "shall remain in effect until [Mr. Zuravel is] advised otherwise, in writing, by [the mayor]."

{¶30} A Stow police officer testified that, on May 5, 2015, he personally delivered the mayor's letter to Mr. Zuravel. The officer read the letter aloud to Mr. Zuravel, which was recorded by both the officer's dash camera and Mr. Zuravel's wife.

{¶31} The director of planning and development testified that he emailed Mr. Zuravel on July 2, 2015, and stated, "You can have the drawings you submitted. We'll put them in the mail if you like." He then left city hall to conduct zoning inspections out in the field. He testified that the email was not meant as an invitation for Mr. Zuravel to visit city hall and he did not believe Mr. Zuravel would come to city hall as a result of the email. He was only offering Mr. Zuravel one potential option of having his drawings mailed to him since he knew Mr. Zuravel could not visit city hall without an appointment.

{¶32} Mr. Zuravel responded to the email approximately thirty minutes later and asked, "Can you put them at [a secretary's] desk?" Mr. Zuravel waited a short while for a reply, but then decided to go to city hall to retrieve his items. The secretary testified that she recognized Mr. Zuravel when he arrived and she was unaware of any scheduled appointments for him. She pushed her panic button and the police were called.

{¶33} The Stow police officer who responded to the trespassing call testified that he observed Mr. Zuravel in the parking lot outside the doors of city hall and told him that he was not supposed to be on city property. Mr. Zuravel explained that he had received an email

regarding some submitted plans that were ready. The officer requested that Mr. Zuravel lift up his shirt so he could make sure there were no weapons in his waistband. Instead, Mr. Zuravel unzipped his pants and dropped them to the ground. The officer confirmed the existence of the mayor's letter over the phone with a police department clerk and ultimately arrested Mr. Zuravel for criminal trespass.

**{¶34}** After reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented adequate evidence for the case to go to the jury. Furthermore, any rational trier of fact could have found all of the essential elements of criminal trespass proven beyond a reasonable doubt.

**{¶35}** The evidence, if believed, established that Mr. Zuravel received proper notice through a letter from the mayor detailing certain parameters for how and when he could come to city hall. The letter warned Mr. Zuravel that failure to abide by its terms and conditions could result in him being escorted out of the building and charged with criminal trespass. It was personally served on Mr. Zuravel at his home and read aloud to him. The reading of the letter was recorded by both an officer's dash cam video and by a video taken by Mr. Zuravel's wife.

**{¶36}** The State also produced sufficient evidence, if believed, to demonstrate that Mr. Zuravel entered or remained at city hall. A secretary testified that she pushed her panic button when she saw Mr. Zuravel walk into city hall, and an officer testified that he arrested Mr. Zuravel in the parking lot of city hall.

**{¶37}** The evidence, if believed, established that Mr. Zuravel was aware of the parameters of the mayor's letter and chose to disregard the risk of being charged with criminal trespass by visiting city hall anyway with heedless indifference to the consequences. Although the director of planning and development emailed Mr. Zuravel and stated, "You can have the

drawings you submitted. We'll put them in the mail if you like[,]" he testified that the email was not intended to be an invitation to visit city hall, but only an offer to mail the drawings. Because the email itself contains no explicit language inviting Mr. Zuravel to city hall and does not reference the mayor's letter or its terms in any way, a jury could reasonably conclude that the email was not an invitation and that Mr. Zuravel acted recklessly in choosing to visit city hall unannounced and in violation of the terms and conditions of the letter.

{¶38} Finally, the evidence, if believed, established that Mr. Zuravel was without privilege to enter or remain at city hall. Multiple witnesses testified as to the disturbances caused by Mr. Zuravel's actions and demeanor throughout most of the work day on April 30th. The assistant city engineer testified that she had to devote her entire day to Mr. Zuravel. She texted the service director and called her supervisor for assistance in dealing with Mr. Zuravel. Several witnesses testified that, at various times throughout the day, Mr. Zuravel was angry, loud, defensive, agitated, red-faced, worked up, condescending, and anxious, with bulging veins on his neck. The city engineer testified that he told Mr. Zuravel he was harassing and bullying the employees. He then felt threatened and scared by Mr. Zuravel's immediate response of glaring, grimacing, and looking down at him in silence. The engineer was afraid of a physical attack and feared being trapped in his own office by Mr. Zuravel. Other employees testified that Mr. Zuravel's comment regarding a CCW concerned or frightened them, and the mayor testified that the intensified level of anger from Mr. Zuravel on April 30th led to a heightened sense of concern for employee safety. A rational trier of fact could have found beyond a reasonable doubt that Mr. Zuravel's privilege to enter city hall without any restrictions was revoked by the mayor's letter after his actions went beyond being a nuisance and rose to a higher degree of disruptive or threatening behavior.

**{¶39}** Mr. Zuravel's second and third assignments of error are overruled.

## ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ERRED IN ENTERING JUDGMENT ON THE VERDICT BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶40}** In his fourth assignment of error, Mr. Zuravel argues that his conviction is against the manifest weight of the evidence. We disagree.

**{¶41}** This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. "This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction." *State v. Hamilton*, 9th Dist. Lorain No. 15CA010830, 2017-Ohio-230, ¶ 20.

**{¶42}** In support of his claim that the trial court's judgment on the verdict was against the manifest weight of the evidence, Mr. Zuravel relies on his sufficiency of the evidence arguments stated above. But, "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Mr. Zuravel has not challenged any of the evidence the State set forth as "unreliable or lacking credibility." *See State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. This Court

will not develop a manifest weight argument on his behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32. We have already determined that his conviction is based on sufficient evidence, and Mr. Zuravel has not shown that this is the exceptional case where the trier of fact lost its way in convicting him. *Id.* at ¶ 33.

{¶43} Mr. Zuravel's fourth assignment of error is overruled.

III.

{¶44} Mr. Zuravel's assignments of error are overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

DONALD J. MALARCIK, Attorney at Law, for Appellant.

AMBER K. ZIBRITOSKY, Law Director, for Appellee.