[Cite as *State v. Hall*, 2017-Ohio-73.]

STATE OF OHIO   )    IN THE COURT OF APPEALS
         )ss:    NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO        C.A. No.  27827

  Appellee

  v.          APPEAL FROM JUDGMENT
            ENTERED IN THE
BRETT H. HALL       COURT OF COMMON PLEAS
            COUNTY OF SUMMIT, OHIO
  Appellant       CASE No.  CR-2014-10-3213(B)

DECISION AND JOURNAL ENTRY

Dated: January 11, 2017

CELEBREZZE, Judge.

{¶1} Appellant, Brett Hall, appeals his conviction for burglary following a jury trial in the Summit County Court of Common Pleas. We affirm.

I

{¶2} On October 22, 2014, Wayne Douglas returned to the residence that he rented in Akron, Ohio to discover that a window was broken and a number of his possessions were missing. The missing items included a flat screen television, amplifier, DVD player, radio, karaoke machine, microwave, hot plate, hair clippers, and clothing. Douglas reported the incident to the Akron police.

{¶3} Several hours later, at about 2:00 a.m. on October 23, 2014, Douglas was trying to fall asleep when he heard noises in his home. A table and lamp that Douglas had placed in front of the broken window had been overturned. Douglas discovered Hall and another man, Larry White, downstairs. Douglas recognized Hall as an acquaintance of his former roommate,

Rachael Kerns. A confrontation ensued between Douglas and the two men. Hall and White left when Douglas called the police for the second time that night.

{¶4} Between Douglas' first and second reports to the police, officers made a traffic stop of a van that Hall was driving. White was a passenger in the van. Kerns also was a passenger. During the traffic stop, Kerns was arrested on an outstanding warrant. The police seized a suitcase from the van for later analysis by the burglary unit, but did not arrest Hall and White for burglary at that time. At trial, Douglas testified that items in the suitcase seized from the van were his personal belongings.

{¶5} The police stopped the same van again a short time after Hall and White left Douglas' residence on the morning of October 23. Hall was driving and White was a passenger in the van. Douglas identified Hall and White as the men who had been in his residence. The police discovered more of Douglas' personal property in the van.

{¶6} Hall and White were indicted for burglary in violation of R.C. 2911.12(A)(2) and proceeded to trial as co-defendants. At trial, several witnesses testified. They included: (1) Douglas, (2) Kerns, (3) Douglas' landlord, (4) co-defendant White, and (5) several Akron police officers.

{¶7} The jury convicted Hall and White of burglary, a second-degree felony. Hall was sentenced to a four-year prison term and three years of post-release control.

{¶8} Hall now appeals from his conviction. He raises three assignments of error for our review.

II

Assignment of Error One

THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT, AND APPEL.L.ANT'S [SIC] CONVICTIONN [SIC] FOR

GURLARY [SIC] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; THE STATE OF OHIO FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT WHEN VIEWED BY THE MANIFEST WEIGHT OF THE EVIDENCE THAT MR. BRET [SIC] HAL.L. [SIC] EITHER PARTICIPATED OR WAS AN ACCOMPLICE IN THE BURGLARY; THERE IS INSUFFICIENT EVIDENCE TO SUPPORT MR. HAL.L.S' [SIC] CONVICTION OF BURGLARY AND THUS APPEL.L.ANT'S [SIC] CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED UPON INSUFFICIENT EVIDENCE AS PERTAINS TO THE FINDING THAT HE COMMITTED THE CRIME.

THE TRIAL COURT ERRED IN OVERRULING MR. HAL.L.S' [SIC] RULE 29 MOTION FOR ACQUITTAL; AS ORIGINAL.L.Y [SIC] MADE AND RENEWED.

**{¶9}** In his first assignment of error, Hall claims that the evidence was (1) insufficient to sustain his conviction and (2) against the manifest weight of the evidence. We will address these arguments separately because "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20.

**{¶10}** "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge to a criminal conviction presents a question of law, which we review de novo. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Although we conduct a de novo review when

considering a sufficiency of the evidence challenge, we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact. *State v. Tucker*, 9th Dist. Medina No. 14CA0047-M, 2015-Ohio-3810, ¶ 7.

{¶11} The jury found Hall guilty of violating R.C. 2911.12(A)(2). R.C. 2911.12(A)(2) provides:

> No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

{¶12} In support of his sufficiency argument, Hall appears to argue that the prosecution did not establish that Douglas' residence was an "occupied structure" because Hall contends that Douglas did not have a legal right to live there. Hall also argues that Kerns gave Hall and White permission to enter the residence to retrieve her belongings. These arguments are not supported by the record.

{¶13} To begin, Douglas testified that he began residing at the residence on June 1, 2014. He testified that Kerns was his friend and former roommate. He explained that Kerns no longer lived at the residence as of October 21, 2014 – the day before the burglary – and had turned in her key that day. Douglas testified that he had returned to his residence on October 22, 2014 to find a window broken and a number of his belongings missing. He further testified that he heard a noise in his residence on the morning of October 23, 2014. A table and lamp that he had placed in front of the broken window had been overturned. Douglas testified that he discovered Hall and White downstairs, and that the two men left after a confrontation. Douglas recognized Hall as an acquaintance of Kerns who drove a minivan. When Hall and White were

apprehended a short time later, Douglas identified them to police as the men who had been in his home.

{¶14} Second, Douglas' landlord testified that he leased the property to Douglas, not to Kerns. Kerns was never listed on the lease. The landlord testified that Kerns had turned in her key to the residence and was not permitted to be on the property effective October 21, 2014. The landlord further testified that, although he had begun eviction proceedings against Douglas for nonpayment of rent, he had reached an agreement with Douglas that would allow Douglas to continue living on the property as a tenant. The landlord testified that he did not give permission to Hall or White to enter the residence.

{¶15} Moreover, Kerns testified that she was no longer residing at the residence on the night in question. She testified that none of her belongings were taken from the residence. Kerns also testified that she did not give Hall or White permission to enter the residence.

{¶16} Further, Akron police officer Tom Parr testified that he twice stopped Hall's van on the morning of October 23, 2014. He testified that he found a suitcase full of the victim's property inside the van during the first stop. Officer Parr testified that he found more of the victim's belonging's inside the van during the second stop.

{¶17} After reviewing the record, and viewing the evidence in a light most favorable to the prosecution, we conclude that a rational jury could have determined beyond a reasonable doubt that Hall was guilty of burglary. The testimony adduced at trial, if believed, would indicate that: (1) the residence was an "occupied structure" and that Douglas legally resided there; (2) Kerns was not a resident of the home at any relevant time and did not give Hall and White permission to enter the residence; and (3) Hall and White forcibly entered Douglas' residence through a window, without permission, with the purpose of stealing items inside.

Under these circumstances, we conclude that Hall's conviction for burglary is supported by sufficient evidence.

{¶18} Hall also argues that his burglary conviction is against the manifest weight of the evidence because the State's case is "riddled with inconsistencies." We disagree.

{¶19} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented. *See Thompkins*, 78 Ohio St.3d at 387. In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases in which the evidence weighs heavily against the conviction. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶20} Hall's manifest weight of the evidence argument turns in major part on the credibility of White's testimony. White testified that Kerns gave Hall and White permission to enter the residence to retrieve her belongings after she was arrested. White further testified that a man he referred to as "Cowboy" gave him the items that the officers recovered from the van, and that "Cowboy" told White that the items belonged to Kerns. Kerns, on the other hand, denied giving White permission to enter the residence. She also denied that her belongings were among the items recovered from the van.

**{¶21}** In addition to White's testimony, Hall also cites alleged inconsistencies in Douglas' testimony in support of his manifest weight argument, including, inter alia, Douglas' testimony about what time he made the initial report to the Akron police. Hall also argues that Kerns' schizophrenia and drug use made her incompetent to testify.

**{¶22}** Contrary to Hall's position, "'[a] conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact.'" *State v. Urbin,* 148 Ohio App.3d 293, 2002-Ohio-3410, ¶ 26 (9th Dist.), quoting *State v. Haydon*, 9th Dist. Summit No. 19094, 1999 WL 1260298, *7 (Dec. 22, 1999). An appellate court will not overturn a judgment on this basis alone, and may not merely substitute its judgment for that of the factfinder. *State v. Serva¸* 9th Dist. Summit No. 23323, 2007-Ohio-3060, ¶ 8. This Court recognizes that "the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. The trier of fact is free to believe "'all, part, or none of the testimony of each witness.'" *State v. Tabassum*, 9th Dist. Summit No. 25568, 2011-Ohio-6790, ¶ 27, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 35. This Court will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version. *Tabassum* at ¶ 27.

**{¶23}** Having carefully reviewed the entire record, weighed the evidence, and examined the credibility of witnesses, we cannot say that this is a case where the jury lost its way in choosing to disbelieve White's testimony, and instead believe the State's witnesses. Under the circumstances, we cannot conclude that Hall's conviction for burglary constitutes a manifest miscarriage of justice. Accordingly, we reject Hall's claim that the guilty verdict on the charge of burglary was against the manifest weight of the evidence.

{¶24} We have determined that Hall's conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, Hall's first assignment of error is overruled.

## Assignment of Error Two

THE PROSECUTORS [SIC] REMAKRS [SIC] WERE PROSECUTORIAL MISCONDUCT AND DEPRIVED MR. HAL.L. [SIC] OF HIS RIGHT TO A FAIR TRIAL IN VIOLATION OF HIS 5TH, 6TH, AND 14TH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUION [SIC] AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUION [SIC].

{¶25} In his second assignment of error, Hall claims that the state violated his constitutional rights during rebuttal closing argument by: (1) referring to evidence not in the record; (2) remarking on the credibility of witnesses; (3) commenting on Hall's decision not to testify; and (4) disparaging defense counsel. We disagree.

{¶26} "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks." *State v. Smith*, 14 Ohio St.3d 13, 13 (1984), citing *State v. Woodards*, 6 Ohio St.2d 14, 26 (1966). However, the prosecutor has a duty in closing arguments to avoid going beyond the evidence before the jury. *Id.* at 13-14. As an initial matter, the State "must avoid insinuations and assertions which are calculated to mislead the jury." *Id.* at 14, citing *Berger v. United States*, 295 U.S. 78, 88 (1935).

{¶27} This Court has adopted the Ohio Supreme Court's test for evaluating a claim of prosecutorial misconduct arising during closing argument. We must determine "whether the prosecutor's remarks were improper and, if so, whether the remarks prejudicially affected the defendant's substantial rights." *State v. Kirby*, 9th Dist. Summit No. 23814, 2008-Ohio-3107, ¶ 23, citing *Smith* at 14. It is improper for a prosecutor to express an opinion as to the credibility of a witness or as to the defendant's guilt. *Kirby* at ¶ 23. A reviewing court focuses not merely

on the culpability of the prosecutor, but rather considers the trial record as a whole to determine whether the defendant received a fair trial. *Id.*, citing *State v. Lott*, 51 Ohio St.3d 160, 166 (1990).

{¶28} Here, Hall claims that the prosecutor improperly went beyond the evidence by reminding the jury that Hall and White were caught twice in the van with Douglas' stolen property. The prosecutor explained:

> The first time was around 12:30 a.m. on the 23rd of October, this suitcase, full of [Douglas'] property; the second time, an hour and a half later, 2:00 a.m., approximately, these two [d]efendants – shocker, what a surprise there – these two [d]efendants are caught in the same van with more of [Douglas'] property. All of that was taken prior to these two [d]efendants being confronted by Mr. Douglas at 2:00 a.m. on the 23rd.

{¶29} Contrary to Hall's claim, the prosecutor's statement is factually supported by the record. Officer Parr, the police officer who first stopped the van driven by Hall and occupied by White, testified that items were seized from the van that later were determined to belong to Douglas. Officer Parr further testified that he pulled the same van over at around 2:00 on October 23, 2014, at which time the van was occupied by Hall and White and contained more of Douglas' stolen belongings. Accordingly, the prosecutor's remarks do not extend beyond the record. To the extent that Hall objects to the prosecutor's use of the word "shocker," he did not object to the use of the term at trial or raise plain error on appeal. Thus, we will not consider whether that remark constitutes prosecutorial misconduct. *See State v. Geiger*, 9th Dist. Medina No. 12CA0006-M, 2012-Ohio-4002, ¶ 15.

{¶30} Hall also argues that the prosecutor improperly expressed an opinion as to the credibility of witnesses when the prosecutor (1) told the jury that Kerns was competent and that she "told [the jury] the truth," and (2) stated that White's testimony was "a lie" and that his "story is ridiculous." However improper the prosecutor's comments about the credibility of

witnesses might have been, neither Hall nor White objected to them during rebuttal closing argument. Hall's failure to object at trial forfeits the issue on appeal except for plain error review. *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 35. Hall has not raised plain error on appeal, however. "[T]his [C]ourt will not sua sponte undertake a plain-error analysis if a defendant fails to do so." *Cross*, 2011-Ohio-3250, at ¶ 41. Thus, we will not construct a plain error argument on Hall's behalf.

{¶31} Hall further contends that the prosecutor violated his constitutional rights by referring to Hall's decision not to testify. Specifically, Hall claims prosecutorial misconduct based on the prosecutor's statement to the jury that "less than 100 words is what this [d]efendant, both [d]efendants, are relying upon for you to say not guilty." Hall objected to the statement. The trial court found that the comment did not pertain to Hall's exercise of his constitutional rights, but rather was the prosecutor's argument regarding the weight of the evidence taking into account that the defense was based almost exclusively on the allegation that Kerns gave Hall and White permission to enter Douglas' residence. We conclude that the trial court was correct. Having reviewed the record in its entirety, we find no basis to construe the prosecutor's statements as a reference to Hall's exercise of his constitutional right to refrain from testifying.

{¶32} Hall also argues that the prosecutor engaged in misconduct by disparaging defense counsel in front of the jury. Specifically, Hall contends that it was error for the prosecutor to state that the only people "in the courtroom with a duty of justice are [the prosecutors]." The trial court sustained an objection to this remark and struck it from the record. The trial court then explained to the jury:

> The jury will strike Counsel's statement that the only individuals in the courtroom responsible for justice are the [p]rosecution.

> * * *

> I'm sustaining [the objection] because all officers of the [c]ourt are sworn to uphold justice. We each have different roles. I understand the [p]rosecution roles. We understand the [d]efense roles.
>
> * * *
>
> [I]n an overarching sense, we're all here for purposes of justice.

The court later instructed the jury that "[s]tatements or answers that the [c]ourt struck or instructed you to disregard are not evidence and must be treated as though you've never heard them." The court further instructed the jury that "[e]vidence does not include the indictment nor the opening or closing statements or arguments of [c]ounsel. The opening statements and closing arguments of [c]ounsel are designed to assist you. They are not evidence."

**{¶33}** Even if the prosecutor's statement about the role of counsel in seeking justice was improper, Hall has not established that, but for the prosecutor's remarks, the jury would not have convicted him. *See State v. Johnson*, 46 Ohio St.3d 96, 102 (1989). The trial court struck the statement from the record and informed the jury that all officers of the court are responsible for seeking justice. The trial court then instructed the jury that the prosecutor's stricken statement, and any statement made in closing argument, could not be considered evidence. Moreover, as discussed, there was ample evidence that Hall and White entered Douglas' residence without permission through a broken window and stole Douglas' belongings. Reviewing the record in its entirety, we cannot conclude that the prosecutor's improper remark regarding the roles of counsel in seeking justice prejudiced Hall's right to a fair trial.

**{¶34}** We find that Hall has not demonstrated prosecutorial misconduct that prevented him from receiving a fair jury trial. Accordingly, Hall's second assignment of error is overruled.

Assignment of Error Three

THE COURT ERRED DENYING A <u>BATSON</u> CHAL.L.ENGE [SIC] WHEN IT IMPOROPERY [SIC] APPLIED THE THREE STEP PROCESS ESTABLISHED BY THE U.S. SUPREME COURT.

**{¶35}** In his third assignment of error, Hall contends that the court incorrectly permitted the state to use a peremptory challenge on an African American juror. He argues that the court failed to correctly apply the required three-step adjudicatory process for a *Batson* claim. We disagree.

**{¶36}** "The Equal Protection Clause of the United States Constitution prohibits deliberate discrimination based on race by a prosecutor in his exercise of peremptory challenges." *State v. Campbell*, 9th Dist. Summit. No. 24668, 2010-Ohio-2573, ¶ 33, citing *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). "'A court adjudicates a *Batson* claim in three steps.'" *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 61, quoting *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 106, quoting *State v. Murphy*, 91 Ohio St.3d 516, 528 (2001). "'First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge.'" *Were* at ¶ 61, quoting *Bryan* at ¶ 106. As a final matter, "'the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination.'" *Id*. "The judge must 'assess the plausibility' of the prosecutor's reason for striking the juror 'in light of all evidence with a bearing on it.'" *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 63, quoting *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). "A facially neutral reason for a strike may indicate discrimination, if the [S]tate uses it only to eliminate jurors of a particular cognizable

group." *Murphy* at 529 (2001). "A trial court's finding of no discriminatory intent will not be reversed on appeal unless clearly erroneous." *Pickens* at ¶ 64.

**{¶37}** Here, the court found that Hall failed to make a prima-facie case of discrimination. Of three potential African American jurors who could have been seated on the jury panel, only one was the subject of a peremptory challenge. Another eventually became a panel member. It appears that the third "self-excused himself" but, according to the trial judge, "would [otherwise] have been on the panel or an alternate." Under the circumstances, the court found that there had not been any pattern of race-based challenges. Thus, the court concluded that Hall failed to articulate a prima facie case of race-based discrimination. Under these facts, we cannot find that the trial court's finding was clearly erroneous.

**{¶38}** Moreover, the trial court further found that the State gave a valid, racially-neutral reason for striking the juror. The prosecution explained that it dismissed several individuals based on the fact that they worked in a social services or "helping profession" that might predispose them to sympathy for the defendants. The court observed that the prosecution had dismissed "a social worker" who was not African American and a "Head Start early daycare worker" who also was not African American. The juror who was the subject of the *Batson* challenge also worked at Head Start. Accordingly, the court found that "the [p]rosecution articulated a reasonable basis for * * * challenging this juror" that the prosecution "consistently * * * followed" throughout voir dire. The court further observed that the prosecution was not required to "demonstrate a for-cause [challenge]." Indeed, the trial court was correct that a peremptory challenge on a juror does not have to "'rise to the level justifying exercise of a challenge for cause.'" *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 97, quoting

*Batson*, 476 U.S. at 97. Accordingly, the trial court did not err in determining that the State articulated a racially valid neutral reason for exercising a peremptory challenge.

{¶39} Regarding the final step of the analysis, the court stated that it "weighed and tried to balance the different interests in this matter" and found that the exclusion of the juror did not "run afoul" of *Batson*. Because the trial court's evaluation of the ultimate question of discriminatory motive depends on an evaluation of credibility, it is entitled to deference. *Murphy*, 91 Ohio St.3d at 530. Here, the trial court considered the circumstances and concluded that the peremptory challenge was not motivated by discrimination. Likewise, we have reviewed the record and conclude that there was no evidence of discriminatory intent.

{¶40} We have determined that the trial court correctly applied the three-step analysis applicable to a *Batson* challenge and did not err in finding a lack of evidence that the peremptory challenge was motivated by discrimination. On this basis, Hall's third assignment of error is overruled.

## III

{¶41} The assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

FRANK D. CELEBREZZE, JR.
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR.

(Celebrezze, J., of the Eighth District Court of Appeals, sitting by assignment.)

APPEARANCES:

KIMBERLY ANNE VALENTI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.