[Cite as *State v. Houlihan*, 2021-Ohio-1228.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|  | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) |  |

STATE OF OHIO

    Appellee

v.

JOHN HOULIHAN

    Appellant

C.A. No.    20CA011666

APPEAL FROM JUDGMENT
ENTERED IN THE
LORAIN MUNICIPAL COURT
COUNTY OF LORAIN, OHIO
CASE No.    2019TRD04144

DECISION AND JOURNAL ENTRY

Dated: April 12, 2021

SUTTON, Judge.

{¶1} Defendant-Appellant, John Houlihan, appeals the judgment of the Lorain Municipal Court. For the reasons that follow, this Court affirms the decision below.

I.

**The Accident and Traffic Citation**

{¶2} On November 8, 2019, at approximately 7:27 p.m., Mr. Houlihan and A.W., a seventeen-year-old driver, were involved in a motor vehicle accident in Sheffield Lake, Ohio. The accident occurred in front of Mr. Houlihan's driveway at the corner of Ferndale Avenue and Dillewood Street. According to the record, Mr. Houlihan pulled into the eastbound lane of oncoming traffic just past his driveway. Then, while turning the steering wheel with the vehicle traveling in reverse, Mr. Houlihan collided with the driver's side of A.W.'s vehicle, behind the front wheel well. At the time of impact, A.W.'s vehicle was traveling westbound on Ferndale

Avenue. The accident caused damage to both vehicles, however, there were no reports of physical injury to anyone involved.

{¶3} Subsequent to the accident, the Sheffield Lake Police Department issued a traffic citation against Mr. Houlihan for improper backing, a minor misdemeanor, pursuant to Sheffield Lake Codified Ordinance 331.13. Mr. Houlihan pleaded not guilty and a bench trial ensued.

### The Bench Trial

{¶4} At the June 25, 2020 bench trial, Plaintiff-Appellee State of Ohio called three witnesses in its case-in-chief: A.W., A.W.'s passenger, D.T., and Officer John Fischer of the Sheffield Lake Police Department.

{¶5} A.W. testified she was driving in the westbound lane on Ferndale, approaching the Dillewood intersection, and noticed a vehicle "flashing" its headlights. She observed the vehicle pull into the eastbound lane of oncoming traffic and stop "for about like a minute or so." A.W. also stopped her vehicle and then, after a short amount of time, proceeded forward in the westbound lane. A.W. testified she "felt [Mr. Houlihan's] car against [her vehicle]." A.W., however, did not see Mr. Houlihan collide with her vehicle because she was looking and driving forward. After the collision, both vehicles stopped. A.W. testified Mr. Houlihan "came up to my window and [] said that he would pay for the damages and that he has insurance." According to A.W., both parties called the police, and Mr. Houlihan backed his car into the driveway prior to the police arriving. After the police arrived, A.W., and her passenger D.T., spoke with the police and wrote witness statements. On cross-examination, A.W. admitted that two other passengers in her vehicle left the scene without speaking to the police or making witness statements.

{¶6} D.T. testified he remembered being a passenger in A.W.'s vehicle traveling westbound on Ferndale. D.T. also recalled seeing a vehicle in front of them "weaving." The

vehicle moved into the eastbound lane of oncoming traffic and stopped. D.T. indicated that A.W. also stopped her vehicle and "sat there for a minute." According to D.T., when A.W. started moving again, the other vehicle "backed into the side of [A.W.'s] car." D.T. testified he "[saw] it." "[He] [saw] the whole thing." D.T. further testified he told A.W. to call the police, and the driver of the other vehicle "continued to back into his driveway." Further, D.T. stated, "before the cops even got there, he went inside." D.T. identified Mr. Houlihan as the driver of the other vehicle, and indicated that, after the accident, Mr. Houlihan "talked to us," and "asked if we [were] okay, and then he said that he had insurance and he would pay - - like he would tell the insurance company and that he would pay for it, the damages."

{¶7} Officer Fischer testified he is employed with the Sheffield Lake Police Department and has worked there approximately nine months. On November 8, 2019, at 7:27 p.m., Officer Fischer was called to the scene of a "minor" accident on Ferndale and Dillewood. When Officer Fischer arrived, he observed that "Mr. Houlihan was already parked and [A.W.'s vehicle] was off to the north side, which is the westbound lane of Ferndale." Officer Fischer identified Mr. Houlihan as the driver of the vehicle that collided with A.W. Officer Fischer also testified Mr. Houlihan's car was "backed into his driveway" when he arrived on the scene. Officer Fischer observed damage to the "front end on the passenger's side" of Mr. Houlihan's vehicle, and "impact right behind the driver's side front wheel well and scrapes spilling to the back of [A.W.'s] vehicle." When asked if he was able to determine the cause of the accident, Officer Fischer explained:

> Yes. We believed that with the statements given from Mr. Houlihan-he even said he went into the opposite lane of traffic to prepare to back up into his vehicle, which is a citable offense there in and of itself-and the witness statements from the drivers and the passenger in the Cruze, that he went into the [eastbound] side, which is the south lane on Ferndale. They stopped. They stated that they didn't know what he was doing, and proceeded. And then the driver stated that she didn't see the car hit her, but felt the impact. The passenger stated that [Mr. Houlihan] started to back

up. So that was the picture painted to me through statements, verbal and written, what had happened.

Officer Fischer, based on the statements given him by Mr. Houlihan, A.W., and D.T., along with his observation of the damage to the vehicles, determined Mr. Houlihan was at fault for the accident.

{¶8} After the close of the State's case, Mr. Houlihan testified upon his own behalf, stating:

* * *

I come home from work every night like that. I come [] westbound on Ferndale. Ours is the last block on [] Ferndale. I pulled into the eastbound lane and stopped prior to my driveway. I looked in my mirrors; nothing. I then proceeded to turn right and then back into my driveway. * * *

As I was backing into my driveway, I felt the hit, I guess. I stopped immediately. I got out of the car. I walked up to her car and asked if everyone was okay. And they really didn't answer me, but I said, everything will be okay. I got insurance. We'll take care of everything. And I proceeded to call the police. * * *

I did at no time, and I heard it today, say that I would pay for her car. That's false.

* * *

Mr. Houlihan admitted to engaging in the "maneuver of turning and backing" into the driveway "every night except for weekends for almost 20 years." Mr. Houlihan claimed there was no one behind him when he checked his mirrors and he also claimed he did not see any headlights. Specifically, on cross-examination, Mr. Houlihan testified:

* * *

Q. At some point, you agree that you started to back up and there was a collision and this car just came out of nowhere?

A. Came from behind me.

Q. Right. But you never saw headlights, you never saw the car, you never saw anything?

A. No.

Q. And even if [] that car had only been traveling on Ferndale for a short period of time, doesn't it make sense that you would have seen headlights or you would have seen something if you looked in your rearview mirror?

A. I would have seen headlights behind me, yes, sir, but as I'm making that right-hand bend turn—as soon as I stop on the eastbound lane before my driveway, I make that move and I'm looking in my rearview mirror as I'm backing up into my driveway[.]

Q. So you're not [] looking for cars, so you're not looking in your rearview mirror?

A. Not after I make the move, no.

Q. Okay.

A. The rearview mirror would be showing me my driveway.

Q. So it's possible you were focused on backing in your driveway and didn't check to see if there was a car coming?

A. I check to see if there was a car coming before I made my initial move, yes.

* * *

Q. Even if [A.W.] had just turned onto Ferndale [] at the preceding street, when you started to back up, [] how is it possible that you would not have seen headlights or something indicating a car?

A. I can't explain that to you, sir.

Q. It's possible you did not look in your rearview mirror because you were focused on backing into your driveway. Isn't that possible?

A. After I made the turn, but not sitting in the eastbound lane, no sir.

* * *

Mr. Houlihan further testified he spoke with another officer on the scene, prior to Officer Fischer, and asked that officer if he should move his vehicle which was still in the road. According to Mr. Houlihan, the officer said "yes," and Mr. Houlihan backed in his driveway.

{¶9} On June 29, 2020, the trial court journalized an entry finding Mr. Houlihan guilty of improper starting/backing and issued a one hundred dollar fine. Mr. Houlihan's fine has been stayed pending appeal. It is from this Judgment Mr. Houlihan filed his Notice of Appeal, citing two assignments of error. The State did not appear in this appeal.

II.

### ASSIGNMENT OF ERROR I

**APPELLANT'S CONVICTION FOR IMPROPER BACKING WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. HOULIHAN'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.**

{¶10} In his first assignment of error, Mr. Houlihan argued the State lacked sufficient proof to convict him of improper backing because his actions did not rise to the level of "criminal negligence," and, if he had initiated contact with A.W.'s vehicle, he would have been moving forward, not backward. Importantly, Mr. Houlihan did not cite any precedent of this Court regarding the mens rea of "criminal negligence," as an element of R.C. 4511.38. Instead, Mr. Houlihan cites non-binding decisions from other appellate courts. Further, Mr. Houlihan's proposition that he was moving "forward," instead of "backward" is not supported by this record. Thus, for the reasons stated below, we are not persuaded by these arguments.

### Sufficiency of the Evidence

{¶11} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Salupo*, 9th Dist. Lorain No. 07CA009233, 2008-Ohio-3721, ¶ 3, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production * * *" and is, "[i]n essence, * * * a test of adequacy." *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386.

"The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶12} Sheffield Lake Codified Ordinance 331.13(a), identical to R.C. 4511.38, states, in relevant part:

> No person shall start a vehicle which is stopped, standing or parked until such movement can be made with reasonable safety.

> Before backing, operators of vehicles shall give ample warning, and while backing they shall exercise vigilance not to injure person or property on the street or highway.

Further, "[v]igilance' is defined as, *inter alia*, 'precaution.'" *Linton v. Tomazic*, 9th Dist. Lorain No. 91CA005170, 1992 WL 125248, *2 (May 27, 1992), citing *Black's Law Dictionary* 1406 (5 Ed.1979). "Similarly, one who is 'vigilant' may be defined as 'watchful, awake, and on the alert; attentive to discover and avoid danger, or to provide for safety; circumspect; *cautious*; wary.'" (Emphasis in original.) *Id*.

{¶13} Based upon this record, and in reviewing the evidence in a light most favorable to the prosecution, the State presented sufficient evidence to support that, pursuant to Sheffield Lake Ordinance 331.13(a), Mr. Houlihan did not give ample warning and/or exercise vigilance in backing into his driveway on November 8, 2019, which caused damage to A.W.'s vehicle. First, Mr. Houlihan admitted to pulling into the eastbound lane of oncoming traffic, just past his driveway, and stopping for some period of time. Second, Mr. Houlihan admitted that, after making his "initial move" of pulling into the eastbound lane of oncoming traffic, he **did not look**

**again for any traffic while turning and backing into his driveway**. Mr. Houlihan could not explain why, if he checked for traffic, he did not see A.W.'s vehicle or headlights. Third, A.W. testified she stopped her vehicle because she did not know what Mr. Houlihan was doing in the oncoming lane of traffic, and D.T. testified he "saw" Mr. Houlihan collide with the side of A.W.'s vehicle while backing into the driveway. Finally, based upon the testimony of Officer Fischer, the damage to the front of Mr. Houlihan's vehicle and the driver's side of A.W.'s vehicle, behind the front wheel well, is consistent with Mr. Houlihan's vehicle making impact with A.W.'s vehicle while backing into the driveway.

{¶14} Here, any reasonable trier of fact could have found the essential elements of improper backing proven beyond a reasonable doubt; that Mr. Houlihan did not give ample warning and exercise vigilance, or precaution, while backing to avoid striking and damaging A.W.'s vehicle.

{¶15} Thus, Mr. Houlihan's sufficiency argument is not well-taken and the first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**APPELLANT'S CONVICTION FOR IMPROPER BACKING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. HOULIHAN'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.**

{¶16} In his second assignment of error, Mr. Houlihan argued A.W.'s testimony was "unreliable" and "self-serving," and Officer Fischer's "testimony created further doubt" as to his guilt. Specifically, Mr. Houlihan raised concerns that: (1) A.W. testified she did not actually see the collision; (2) A.W.'s testimony about following Mr. Houlihan for several blocks was unsupported by D.T.'s testimony; (3) A.W. did not disclose to the police that two of her other

passengers left the scene of the accident; and (4) Officer Fischer had no experience with accident reconstruction and, on cross-examination, agreed that two separate versions of events ***could*** have happened to explain the impact.

### Manifest Weight of the Evidence

{¶17} As this Court has previously stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d 380, 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶18} Here, the testimony of A.W., D.T., Officer Fischer, and Mr. Houlihan, along with the photographs of the vehicles and the witness statements, consistently establish that Mr. Houlihan pulled into the eastbound lane of oncoming traffic, and, without exercising vigilance by looking for traffic while turning and backing into his driveway, collided with A.W.'s vehicle. A.W. explained she did not see the vehicles collide because she was already passing Mr. Houlihan and "looking straight forward." Further, A.W. explained she does not look out her "side window" while driving unless she has to "look both ways." A.W. also answered all questions posed regarding the additional passengers in her vehicle on the date of the accident.

{¶19}   Moreover, the trial court heard testimony from both A.W. and D.T. regarding where they were coming from on the date of the accident and the length of time A.W. followed Mr. Houlihan's vehicle.  Although this testimony slightly differed, the trial court also heard Mr. Houlihan testify that, once he made his initial move in the oncoming lane of traffic, he did not continue to look for traffic while backing into his driveway and that he never saw headlights or A.W.'s vehicle before the collision.  Further, D.T. testified he "saw" Mr. Houlihan strike the driver's side of A.W.'s vehicle as Mr. Houlihan was backing into his driveway.

{¶20}   Officer Fischer testified the damage to the vehicles was "consistent" with Mr. Houlihan striking A.W.'s vehicle while backing into his driveway.  Although there was some question regarding the speed of A.W.'s vehicle at the time of impact and Officer Fischer agreed the damage to A.W.'s vehicle "could" indicate A.W. did not "just start her car again" prior to impact, Officer Fischer ultimately concluded, from the totality of the evidence, Mr. Houlihan collided with A.W.'s vehicle while backing into his driveway.

{¶21}   Based upon this record, this Court cannot conclude that the trial court clearly lost its way in resolving conflicts in testimony, especially those regarding peripheral issues such as where A.W. and her passengers were traveling, the distance they followed Mr. Houlihan, or the fact that A.W., a seventeen-year-old driver, had additional passengers in her vehicle, in convicting Mr. Houlihan of the minor misdemeanor of improper backing.  Certainly, this is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶22}   Thus, Mr. Houlihan's weight of the evidence argument is not well-taken and the second assignment of error is overruled.

11

III.

**{¶23}** Based upon the foregoing, Mr. Houlihan's two assignments of error are overruled and the judgment of the Lorain Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Lorain Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

GINO PULITO, Attorney at Law, for Appellant.

DAVID GRAVES, Prosecuting Attorney, for Appellee.