[Cite as *State v. Link*, 2026-Ohio-1640.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

CHARLES F. LINK

    Appellant

C.A. No.     31506

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR-2024-07-2274

DECISION AND JOURNAL ENTRY

Dated: May 6, 2026

STEVENSON, Judge.

{¶1} Defendant-Appellant Charles Link appeals the judgment of the Summit County Court of Common Pleas finding him guilty of six counts of rape and seven counts of gross sexual imposition ("GSI") and sentencing him on these offenses. For the following reasons, this Court affirms.

I.

{¶2} A grand jury indicted Mr. Link on seven counts of rape in violation of R.C. 2907.02, a felony of the first degree, and eight counts of GSI in violation of R.C. 2907.05, a felony of the third degree. The rape charges and seven of the GSI charges arose from Mr. Link's alleged conduct against C.D. from the time C.D. was 6 to 12 years old. The remaining GSI charge arose from Mr. Link's alleged conduct against K.N. from the time K.N. was 10 to 12 years old. C.D. and K.N. both had a familial relationship with Mr. Link. The indictment alleged that the charged offenses occurred between November 29, 2007, and March 26, 2021. The State later dismissed one count

of rape and one count of GSI relating to C.D. Mr. Link pleaded not guilty to the charged offenses and the matter proceeded to a jury trial.

{¶3} At the time of trial, victim C.D. was 23 years old. C.D. testified that Mr. Link is married to her paternal grandmother ("Gail") and that he is "[her] grandpa." C.D. regularly stayed at her grandparents' house from the age of 4 to 12 while her parents were working. Gail operated a daycare out of the home and watched other children in addition to C.D.

{¶4} C.D. testified that Mr. Link started touching her inappropriately when she was four years old. The inappropriate touching started with Mr. Link sitting C.D. on his lap in the living room and "kiss[ing] [her] ears and [her] neck" and "groping" her "chest" and "private parts." C.D. testified the inappropriate touching got worse and that Mr. Link started to "[r]ape" her beginning when she was "[f]ive to six." The rapes occurred in Mr. Link's bedroom, which she referred to as "[t]he prayer room." C.D. testified that the touching would occur during the day "throughout the week" and that the rapes happened "at night."

{¶5} C.D. testified that Mr. Link penetrated her vagina with his fingers, anally raped her, and that he forced his penis in her mouth. This conduct occurred "[o]nce a week" from the age of 7 to 9. She testified that this conduct became "[a] little less frequent" starting at the age of 10.

{¶6} C.D. recalled an incident that occurred when she was 8 or 9 years old and she spent the night at Mr. Link's house after attending a concert. She testified that Mr. Link held her down on the bed and that she was anally penetrated. C.D. testified that Gail was knocking on the door and telling Mr. Link to unlock the door during this incident. C.D. stated that her "clothes were so dirty" and that Gail had her shower after the incident.

{¶7}    C.D. testified that she never told anyone what was going on because Mr. Link had told her to keep it between them. She reported the incidents to the police after her husband and parents became suspicious that something had happened between C.D. and Mr. Link.

{¶8}    Victim K.N. was 16 years old at the time of trial. K.N. is Gail's biological great-granddaughter and she viewed Mr. Link as her grandfather. Gail and Mr. Link raised K.N.'s mother.

{¶9}    Gail babysat K.N. at her in-home daycare from birth until K.N. "was like 10-ish." K.N. went to Gail's daycare before and after school once she started school, with the bus picking her up at the Link residence. K.N. testified that Mr. Link was usually not home in the mornings, but there was an hour overlap when she was at the house with Mr. Link in the afternoon.

{¶10}    K.N. testified that Mr. Link would make her "stay on his lap or - - would hug [her] for like strange amounts of time" and that he would hug her "really close." She testified that that Mr. Link would take her to the prayer room and close the door. According to K.N., Gail was always home but she never went into the prayer room with her and Mr. Link. K.N. did not testify to any inappropriate sexual conduct occurring in the prayer room.

{¶11}    K.N. testified to an incident when she was "[a]round 10" and was sitting on Mr. Link's lap in the living room. According to K.N., Mr. Link was "saying, like, how pretty I was and that he loved me and [he] asked for a kiss" while she was sitting on his lap. K.N. testified that Mr. Link proceeded to kiss her "on the mouth" and she "could feel his tongue on [her] mouth." K.N. recalled that Gail was in the kitchen when this occurred.

{¶12}    K.N.'s mother ("Mother") testified that she was raised by Mr. Link and Gail, who is her paternal grandmother. According to Mother, Mr. Link would take her to the prayer room where he sometimes had Mother sit on his lap. Mother did not testify to any inappropriate conduct

occurring between her and Mr. Link, but she believes that her memory may be repressed. Mother acknowledged on cross-examination that she has no claims against Mr. Link. Mother talked to her children after learning about C.D.'s report concerning Mr. Link and she later talked to Detective Bryon Cadwell of the Summit County Sheriff's Office Detective Bureau.

{¶13} Detective Cadwell testified that he received C.D.'s report concerning her allegations against Mr. Link and that he conducted the investigation. He spoke to family members and interviewed C.D. as part of his investigation. He also observed the forensic interview of K.N. at the CARE Center at Akron's Children Hospital.

{¶14} The CARE Center social worker who conducted the forensic interview of K.N. testified at trial and her findings and a video recording of the interview were admitted into evidence. The social worker noted K.N.'s report that Mr. Link grabbed her arm and held her by the waist, forcing her to sit on his lap while they were in the living room. She also noted that K.N. reported Mr. Link pulled her down on his lap, used his arm to hold her down, and that he rubbed her waist and leg as she was sitting on his lap with "her butt sitting on his leg." When the social worker asked K.N. what part of her leg Mr. Link had touched, K.N. "touched . . . her thigh, her upper thigh." The social worker explained that it is "very common" for children to point to a body part in response to a question during a forensic interview. K.N. reported to the social worker that Mr. Link also kissed her on the mouth and that she could feel his tongue. The social worker also noted K.N.'s report that Mr. Link would whisper "in her ear while rubbing her waist" during their interactions. The social worker does not make referrals for every patient, but she did make two referrals for K.N., including a referral for trauma therapy.

{¶15} Another granddaughter and C.D.'s husband also testified on behalf of the State at trial. According to the granddaughter, it was common for Mr. Link to take children to the prayer

room to pray. The granddaughter acknowledged on cross-examination that she does not have any claims against Mr. Link. C.D.'s husband testified that he went with C.D. to the Link residence on two different occasions in 2023. He testified that Mr. Link made a sexual comment about C.D. and tried to kiss her at one visit and that he saw Mr. Link "kissing on [C.D.'s] neck and her ears" at another visit.

{¶16} Mr. Link did not testify in his defense at trial. He called Gail as a witness who testified on his behalf. Gail testified that she was always home when kids were at her house and that she never saw Mr. Link engage in inappropriate behavior with any of the children. She never saw anything that would have indicated that C.D. was being sexually assaulted by Mr. Link, nor did she see anything inappropriate between Mr. Link and K.N. Gail testified that she would have reported Mr. Link if she had any inkling of any inappropriate behavior. She acknowledged on cross-examination that Mr. Link took girls to the prayer room and that he would close the door while inside the room.

{¶17} The jury found Mr. Link guilty of the rape and GSI charges. Mr. Link appeals his judgment of conviction raising three assignments of error.

I.

**ASSIGNMENT OF ERROR I.**

**APPELLANT CHARLES LINK'S TRIAL COUNSEL WAS INEFFECTIVE IN VIOLATION OF [MR.] LINK'S RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION.**

{¶18} Mr. Link argues in his first assignment of error that he was denied effective assistance of counsel. We disagree.

{¶19} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Mr. Link must

establish (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. The Ohio Supreme Court has stated that a court, however,

> must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). To establish prejudice, Mr. Link must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 2016-Ohio-8025, ¶ 138.

{¶20} Mr. Link argues that he received ineffective assistance of counsel because: (1) his trial counsel failed to "meaningfully" contest the GSI charge involving K.N.; (2) his trial counsel failed to object to inadmissible other-acts evidence; and (3) his trial counsel failed to argue that the GSI and rape charges involving C.D. were allied offenses. He points out that the trial judge had admonished counsel on the record, expressing concerns relating to counsel's representation. The State maintains that Mr. Link "has established neither prong of the *Strickland* test regarding any three of the alleged deficiencies he has identified in his trial counsel's performance."

{¶21} Each of Mr. Link's arguments fails to establish that his trial counsel provided ineffective assistance. As to the GSI claim involving K.N., trial counsel stated in opening statement that "Gail would have known" if Mr. Link had committed the alleged acts. He produced the testimony of Mr. Link's wife Gail, saying that she never witnessed anything inappropriate between K.N. and Mr. Link. Counsel proceeded with this theory throughout trial, again stating in his closing

argument that "I told you when we started in opening statements that my theme of the case was going to be that Gail would have known." Thus, the defense contested all the charges, including the GSI charge involving K.N.

{¶22} K.N. testified that the incident with Mr. Link occurred in the living room and that Gail was in the kitchen when it occurred. Regarding trial counsel's strategic decision to not cross-examine K.N., who was a minor, this Court has previously stated: "'[s]trategic trial decisions are left to the deference of trial counsel and are not to be second-guessed by appellate courts.'" *State v. Granakis*, 2017-Ohio-8428, ¶ 29 (9th Dist.), quoting *State v. Miller*, 2007-Ohio-370, ¶ 10 (9th Dist.), citing *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). *See*, *e.g., State v. Diaz*, 2005-Ohio-3108, ¶ 20-23, 26 (9th Dist.) (trial counsel's decision not to cross-examine child victims in case involving rape and GSI may be a "debatable trial strateg[y]" but was within the realm of sound trial strategy and did not constitute ineffective assistance of counsel). Specifically, K.N.'s direct testimony did not contain some of the allegations contained in the social worker's report, and it would be a strategic decision to avoid cross-examination to prevent the jury from hearing those portions of her claims directly from K.N. Counsel called Gail to testify at trial. Gail testified that she was home when the children were present and that "there was never anything that showed me that there was anything [inappropriate] happening at my house." Counsel moved for a Crim.R. 29 motion for acquittal of all charges at the close of the State's case and he renewed this motion after the close of all the evidence. We cannot say that trial counsel's performance was deficient or that counsel failed to "meaningfully" contest the GSI charge involving K.N.

{¶23} Next, regarding trial counsel's failure to object to other acts evidence, "'[t]his Court had consistently held that trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.'" *State v. Sandin*, 2023-Ohio-174,

¶ 22 (9th Dist.), quoting *State v. Smith*, 2013-Ohio-3868, ¶ 24 (9th Dist.), quoting *State v. Guenther*, 2006-Ohio-767, ¶ 74 (9th Dist.). C.D. and her husband testified that Mr. Link engaged in inappropriate conduct on two occasions in 2023 and trial counsel did not object to this testimony. Trial counsel cross-examined both C.D. and her husband, raising credibility issues as to both witnesses. Counsel then referred to these credibility issues in his closing argument. Counsel's failure to object was within the realm of trial tactics and, again, does not establish that counsel's performance was deficient.

{¶24}   Lastly, Mr. Link argues that trial counsel was ineffective as he failed to argue at sentencing that the rape and GSI charges involving C.D. were allied offenses. He maintains that "[t]he only evidence in the record . . . that could support the GSI convictions is the same conduct that supports the rape convictions." The record does not support this contention.

{¶25}   In Ohio, "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and [Article I, Section 10,] of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood,* 2010-Ohio-1, ¶ 23. R.C. 2941.25 states as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may only be convicted of one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them .

{¶26}   "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors —the conduct, the animus, and the import." *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus. The Court stated that

offenses are not required to merge for sentencing "if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus. A defendant may be convicted of multiple offenses if his "conduct shows that the offenses were committed separately . . . ." *Id.* at paragraph three of the syllabus. "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff* at ¶ 26.

{¶27}  In this case, C.D. testified that Mr. Link would inappropriately touch her during the day "throughout the week" and that the rapes would occur "at night." She testified that this conduct occurred from the time she was 4 years old until she was 10 years old. The inappropriate touching included "[u]nwanted kissing, unwanted hugs, [and] groping" C.D.'s "chest, [and her] private parts." These incidents established GSI and were separate from the charged rape offenses that occurred at night and included digital, oral, and anal penetration.

{¶28}  Rape and GSI convictions are not allied offenses of similar import where a defendant fails to show that the convictions "stem from a single incident." *State v. Austin*, 2017-Ohio-7845, ¶ 36 (9th Dist.). Mr. Link has not shown that his convictions arose from the same conduct or incident. The record reflects that the jury could have convicted him of rape separately from GSI, which occurred at different times. As such, Mr. Link's convictions for rape and GSI against C.D. were not allied offenses of similar import and this Court cannot say that counsel's failure to present a merger argument as sentencing was deficient.

{¶29}  Mr. Link points out that the trial court expressed concerns regarding counsel's failure to cross-examine the lead detective and "one of the prosecuting witnesses[,]" presumably K.N. as that is the only other of the seven State's witnesses that counsel did not cross-examine. As set forth above regarding K.N.'s testimony, counsel's theory throughout trial was that Gail was always home when the children were present and that, if anything inappropriate was going on, Gail

would have known. K.N. testified on direct examination that Gail was in the kitchen, confirming Mr. Link's theory of the case. Further, she was a minor alleged victim who did not confirm all the allegations in the social worker's report and cross-examination would have given her an opportunity to confirm these additional facts. Counsel's decision to not cross-examine the lead detective, who provided limited testimony pertaining to those he talked to as part of his investigation and the observations he made, was a "[s]trategic trial decision[]" that is "not to be second-guessed by appellate courts." *Granakis*, 2017-Ohio-8428, at ¶ 29 (9th Dist.), quoting *Miller*, 2007-Ohio-370, at ¶ 10 (9th Dist.), citing *Carter*, 72 Ohio St.3d at 558. Mr. Link argues that this case is unique as courts rarely question an attorney's tactics on the record. However, the record reflects that the trial court had also expressed concerns regarding the prosecutor's conduct at trial when the prosecutor was questioning the State's witness, C.D. The court told the prosecutor that she sounded like she was "being very mean" and that her "tone . . . is brutal." Thus, it appears the trial court in this case took a more active role in commenting on counsel's actions.

{¶30} Mr. Link has not demonstrated that trial counsel's conduct was outside the range of reasonable professional assistance. *Strickland* at 691. Mr. Link has not satisfied the first prong set forth in *Strickland*. Having determined that trial counsel's performance was not deficient, we need not proceed to an analysis of whether Mr. Link was prejudiced by a deficiency. Mr. Link's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II.

### THE TRIAL COURT PLAINLY ERRED IN NOT MERGING [MR.] LINK'S CONVICTIONS FOR RAPE AND [GSI].

{¶31} Mr. Link argues in his second assignment of error that the trial court erred by not merging his rape and GSI convictions. We disagree.

**{¶32}** Mr. Link did not raise the issue of merger to the trial court and, "as a result, his argument is subject to plain-error review." *State v. Scott*, 2022-Ohio-1796, ¶ 8 (9th Dist.). The Ohio Supreme Court has stated that: "[a]n accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 2015-Ohio-2459, ¶ 3. "Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

**{¶33}** We incorporate our analysis of Mr. Link's rape and GSI convictions set forth under the first assignment of error. As set forth in our prior analysis, there is no indication that Mr. Link's rape and GSI convictions stemmed "from a single incident." *Austin*, 2017-Ohio-7845, ¶ 36 (9th Dist.). C.D. testified that the conduct relating to the GSI occurred during the day, while the conduct relating to the rape conviction occurred at night.

**{¶34}** Having reviewed the record and the arguments presented, this Court concludes that Mr. Link has not demonstrated that the trial court erred by not inquiring as to whether his convictions should merge for purposes of sentencing. *Rogers* at ¶ 3. Accordingly, Mr. Link's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III.

**[MR.] LINK'S CONVICTION ON COUNT 15 OF THE INDICTMENT FOR [GSI] IS UNSUPPORTED BY SUFFICIENT EVIDENCE.**

**{¶35}** Mr. Link argues in his third assignment of error that the State failed to present sufficient evidence to sustain a GSI conviction relating to K.N. We disagree.

{¶36}  Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  "A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test of adequacy."  *State v. Wilk*, 2023-Ohio-112, ¶ 9 (9th Dist.), citing *In re R.H.*, 2017-Ohio-7852, ¶ 25 (9th Dist.); *Thompkins* at 386.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This Court does not, however, "resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact."  *State v. Hall,* 2017-Ohio-73, ¶ 10 (9th Dist.).

{¶37}  Mr. Link was convicted of GSI under R.C. 2907.05(A)(4), which states that "[n]o person shall have sexual contact with another; . . . when . . . [t]he other person . . . is less than thirteen years of age[.]"  "Sexual contact" means "any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  R.C. 2907.01(B).

{¶38}  Mr. Link argues that the State failed to produce sufficient evidence that he "touched an erogenous zone of K.N.'s or that he did so for the purpose of sexual arousal or gratification." The State maintains that it presented sufficient evidence establishing that Mr. Link's "touching of K.N.'s thigh, leg, buttocks, and waist were done for the purpose of sexual arousal."

{¶39}  Upon a thorough examination of the record, this Court concludes that there is sufficient evidence upon which a jury could reasonably conclude that all the elements of GSI were established beyond a reasonable doubt. The social worker that interviewed K.N. testified that K.N. "touched her thigh, her upper thigh" when asked what part of her leg Mr. Link had touched. The

social worker further noted in her findings K.N.'s report that Mr. Link rubbed her waist and leg when she was sitting on his lap with "her butt sitting on his leg." The social worker's interview of K.N. was played for the jury and admitted into evidence. The State presented evidence that Mr. Link touched K.N.'s waist, leg, thigh, and buttocks with his hands and leg and we conclude that this is sufficient establish "sexual contact" under R.C. 2907.01(B). *See State v. Garner*, 2008-Ohio-1949, ¶ 16 (8th Dist.) (touching of the victim's buttocks over comforter and pajamas was sufficient to support "sexual conduct" under GSI statute).

{¶40} Regarding evidence of touching for the purpose of sexual arousal or gratification, K.N. testified that Mr. Link would hug her for "strange amounts of time" and that he told her "how pretty [she] was and that he loved [her]" before asking for a kiss and putting his tongue in her mouth. The social worker also noted K.N.'s report that Mr. Link would whisper "in her ear while rubbing her waist." We conclude that the jury could reasonably conclude based on this evidence that Mr. Link's touching K.N.'s waist, thigh, and buttocks was for the purpose of sexual arousal. *See State v. Owen*, 2001 WL 1379474, *2 (9th Dist. Nov. 7, 2001) (concluding that a rational trier of fact could have found beyond a reasonable doubt that the touching of the victim, and telling her she had beautiful eyes, was for the purpose of sexual arousal or gratification).

{¶41} In considering the sufficiency of the evidence, this Court must view the evidence in a light most favorable to the prosecution. *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The testimony of K.N. and the social worker, if believed by the trier of fact, was sufficient to establish beyond a reasonable doubt that Mr. Link committed the crime of GSI as alleged in count 15 of the indictment. Mr. Link's third assignment of error is overruled.

III.

**{¶42}** For the reasons stated above, Mr. Link's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

JOSEPH SHELL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.